NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

AUDRA NEWTON-HASKOOR,

    Plaintiff,

v.

COFACE NORTH AMERICA, et al.

    Defendants.

Civil Action No. 11-3931 (JAP)

**OPINION**

---

PISANO, District Judge.

Plaintiff, Audra Newton-Haskoor ("Plaintiff") brings this action against Defendant Coface North America, Inc. ("Coface" or "Defendant")[1] alleging that Coface unlawfully discriminated against her in violation of Title VII and various civil rights statutes, retaliated against her in violation of New Jersey's Conscientious Employee Protection Act, and breached the implied covenant of good faith and fair dealing in its employment relationship with Plaintiff. Presently before the Court is a motion by Coface to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Also before the Court is Plaintiff's motion to amend her complaint to add a count of gender discrimination under New Jersey's Law Against Discrimination. For the reasons below, Defendant's motion is granted, and Plaintiff's motion is denied.

---

[1] All remaining defendants have been dismissed from this case. See Order filed April 30, 2012 at docket entry no. 14.

## I. BACKGROUND[2]

In 1996, Defendant was hired as an investigator by non-party Newton and Associates, a debt collection company located in Metairie, Louisiana that was founded by Plaintiff's father, Bill Newton. Approximately ten years later, in September 2006, Newton and Associates was acquired by Coface Collections North America, Inc. ("CCNA"). Compl. ¶ 9. After the acquisition, Plaintiff entered into a three-year employment contract with Coface. *Id.* ¶ 10.

In January 2009, Plaintiff was promoted to Branch Manager of the Credit Services Division of CCNA. *Id.* ¶ 11. About that same time, CCNA sent a consultant, Frank Trezza, from New Jersey to Louisiana to work on an unspecified "special project under [Plaintiff's] control." *Id.* ¶ 12. According to Plaintiff, within a short time of Trezza's arrival, a number of problems arose with regard to Trezza. First, Plaintiff came to learn that he "was not as knowledgeable and experienced as he claimed to be when hired." *Id.* Second, Trezza "refused to acknowledge Plaintiff as his superior and made it known that he refused to take direction" from Plaintiff because she was a woman. *Id.* Finally, within about two months of Plaintiff's promotion, female employees began complaining to Plaintiff of sexual discrimination and harassment by Trezza. *Id.* ¶ 12-16. Plaintiff advised human resources and management regarding each of these problems but no action was taken by the company. *Id.* Plaintiff also advised the employees who were victims of harassment to file formal complaints, but these formal complaints were ignored. *Id.*

In March 2009, Plaintiff was asked to work on a 90-day assignment in New Jersey, an opportunity that she accepted. *Id.* ¶ 17. The project began in late April 2009. *Id.* ¶ 18. In July

---

[2] The facts recited herein are derived from Plaintiff's complaint and are presumed to be true for the purposes of this motion. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."). They do not represent the factual findings of the Court.

2009, while Plaintiff was apparently still working on the project in New Jersey, the company reassigned supervisory responsibility of Trezza to another employee, Mike Rome, and shortly thereafter many of Trezza's duties were reassigned.  *Id.*¶ 19.  By August 2009, responsibility over "the largest project" in Plaintiff's department was shifted to Mike Rome with Plaintiff's consent.  *Id.* ¶ 20.

Plaintiff alleges that by this time, as a result "of the stress" she had endured over the previous eight months, she was "losing her hair and crying on a daily basis."  *Id.* ¶ 21.  After discussing it with family and friends, Plaintiff decided to ask for a transfer to the company's New Jersey Office.  *Id.* ¶ 21-23.  That request was granted, and Plaintiff moved to New Jersey in December 2009 to head up the collection department for the "Coface Factoring Division."  *Id.* ¶ 21, 23.

During her time in New Jersey, Plaintiff continued "to develop the collection department for the CCMNA [sic] Factoring office."  *Id.* ¶ 26.  As best as the Court can construe from the complaint,[3] during the latter part of 2010, Plaintiff, on her own initiative, undertook an investigation into the company's bookkeeping systems after she discovered some discrepancies in certain reports.  *Id.* ¶ 26-30.  There is no indication that she advised anyone of the discrepancies or of her investigation.  The complaint also does not allege whether she completed her investigation or what the results were.  However, it appears that based upon certain discrepancies Plaintiff allegedly noticed, as well as a conversation she overheard between her supervisor and another executive, Plaintiff believed that Coface had "manipulat[ed]" certain numbers to "show a better bottom line" to "Corporate."  *Id.* ¶ 30.

Plaintiff was terminated from her position in early January 2011.  *Id.* ¶ 35.  Plaintiff was told that the reason for her termination was that she had sent proprietary company information to

---

[3] The entire complaint is drafted in an inartful, somewhat confusing, and often careless manner.

her father after his relationship with the company had terminated.  According to the complaint, after the acquisition, Plaintiff's father had remained with "Coface" until October 2010 as a consultant.  Soon after ending his relationship with the company, Mr. Newton announced he would be starting up a new collection agency on January 6, 2011.  *Id.* ¶ 33, 35.  When confronted, Plaintiff stated that she sent her father a copy of an internal production report one time in October 2010.  *Id.* ¶ 35.

In response to her termination, Plaintiff filed a Charge of Discrimination on March 23, 2011 with the Equal Opportunity Commission ("EEOC").  On April 29, 2011, Plaintiff was issued a Right to Sue notice.  This lawsuit followed.

The instant complaint contains four counts.[4]  In the first two counts, which seem to overlap to some degree, Plaintiff appears to be alleging claims for unlawful sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII"), unlawful retaliation under Title VII for complaints about gender discrimination, and deprivation of Plaintiff's civil rights in violation of 42 U.S.C. §§ 1981, 1985 and 1988.  In the third count, Plaintiff alleges a claim for unlawful retaliation under new Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-2, *et seq*. ("CEPA").  In the fourth count, Plaintiff asserts that Defendant breached an implied covenant of good faith and fair dealing.

Coface has moved to dismiss each of Plaintiff's claims based on a number of different arguments, including:  (1) Plaintiff's Title VII claims and § 1985 claims are time barred; (2) sex discrimination is not actionable under § 1981; (3) Plaintiff has not alleged facts to state a claim under § 1985; (4) Plaintiff has no cause of action under § 1988; (5) Plaintiff has failed to state claims for unlawful retaliation because she has not pled facts showing that she engaged in a

---

[4] Each count in the complaint is brought against "Defendants" collectively.

protected activity that caused the allegedly retaliatory conduct; and (6) Plaintiff has failed to set forth facts that support a claim for breach of the covenant of good faith and fair dealing.[5]

In response, Plaintiff asserts that her discrimination and retaliation claims are not time barred under a continuing violation theory, that she has stated a prima facie CEPA claim, and that she has stated a prima facie case of retaliation and discrimination under Title VII for complaining about discrimination.[6]

## II. ANALYSIS

A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  The Supreme Court explained the standard for addressing a motion to dismiss under Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The *Twombly* Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"  *Id.* at 555 (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]." (internal quotation marks

---

[5] Coface also argues that Coface was not Plaintiff's employer, but rather Plaintiff's employer was CCNA.  The complaint alleges that Coface was Plaintiff's employer, but other facts alleged in the complaint can be read to lend some support to Coface's argument.  It appears that the ultimate resolution Coface's argument would require reference to matters outside the pleading and, thus, would be is more appropriately addressed by way of a summary judgment motion.  However, given the Court's opinion as set forth herein, it does not need to reach the question.
[6] Plaintiff's brief also makes reference to New Jersey's Law Against Discrimination.  However, no such claim is asserted in the complaint.

omitted)). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact) ..." *Twombly*, 550 U.S. at 555 (internal citations and footnote omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). When evaluating a motion to dismiss for failure to state a claim, district courts conduct a three-part analysis.

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. *Iqbal*, 556 U.S. at 678. A plaintiff may not required to plead every element of a prima facie case,

6

but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (3d Cir. 2009).

B. Title VII Sex Discrimination Claim

To establish a prima facie case of sex discrimination under Title VII, the plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment decision; and (4) circumstances exist that give rise to an inference of unlawful discrimination in that similarly situated male employees were treated more favorably. *Brown-Baumbach v. B&B Automotive, Inc.*, 437 Fed. Appx. 129, 134 (3d. Cir. 2011) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir.2006)). Plaintiff contends that the facts pled in the complaint are sufficient to state a claim for gender discrimination under Title VII. The Court disagrees.

Giving Plaintiff the benefit of all reasonable inferences, the complaint appears to contain facts that satisfy the first and second elements of a Title VII discrimination claim. As to the third element, Plaintiff claims that her "transfer and termination were adverse employment decisions." Pl. Br. at 24.[7] As to the fourth element, Plaintiff alleges that the circumstance that raise an inference of unlawful discriminatory action was the fact that "Trezza was never disciplined or terminated" despite "complaints of sexual harassment lodged against him by female employees with the participation of Plaintiff." *Id.*

The Court finds Plaintiff's assertions to be meritless and concludes that Plaintiff has failed to state a claim for sex discrimination under Title VII. As an initial matter, there is

---

[7] Plaintiff's 25-page brief does not contain page numbers; therefore, the Court refers to the page number appearing in the header generated by the District's electronic filing system.

nothing in the complaint to infer that Plaintiff's transfer to New Jersey was an "adverse employment decision." To the contrary, Plaintiff herself requested the transfer to the New Jersey office, and it appears that her request was enthusiastically granted by management. *See* Compl. ¶ 21, 23 (President of Coface Credit Management North America "agreed that Plaintiff would be a valuable asset to the Factoring Division" and "Plaintiff's transfer was approved immediately without objection or question.") [8]

Turning to Plaintiff's termination, the complaint is devoid of any facts that raise an inference that the basis for Plaintiff's termination was her sex. It is true that the complaint alleges that another employee, Bryan Clancy, a male, was also accused of sending "reports" to Mr. Newton. Unlike Plaintiff, Clancy was not terminated. Compl. ¶ 36. However, the two do not appear to have been "similarly situated," as Clancy denied sending any such reports to Newton, while Plaintiff admitted to management that she had done so on at least one occasion.

Furthermore, the Court is not persuaded by Plaintiff's argument that discrimination can be inferred from the fact that Trezza was not terminated or disciplined in 2009 despite allegations of sexual harassment against him. Pl. Brf. at 24. As best as the Court can construe Plaintiff's argument, it appears Plaintiff is trying to say that Trezza, a male, engaged in bad behavior and was not disciplined while, Plaintiff, a female, engaged in bad behavior and was terminated. However, the nature of the parties' alleged behavior is too dissimilar and the time periods in which the behaviors occurred are too remote to conclude the two were "similarly situated" so as to permit the inference advanced by Plaintiff.

---

[8] The Court has assumed that the "transfer" Plaintiff refers to in her brief is Plaintiff's permanent relocation to New Jersey, and not the temporary assignment of Plaintiff to the New Jersey office in early 2009. However, even if Plaintiff was referring to her 2009 temporary assignment, the Court's conclusion is unchanged. There is nothing in the complaint from which it can be inferred that Plaintiff's temporary assignment was an adverse employment action. Indeed, Plaintiff herself viewed it as "an opportunity to learn about other aspects of Coface's many services and a chance to advance her career." Compl. ¶ 18.

8

Coface has also argued that any sex discrimination claim that is based *solely* on the events involving or concerning Trezza is untimely. However, Plaintiff is clear that she has not brought any claims based solely upon the actions of Trezza. Rather, Plaintiff states that the discriminatory act upon which her claims are based is the termination of her employment. Pl. Brf. at 15 (stating that Plaintiff's Title VII, § 1985 and CEPA claims "rely upon the distinct act of termination"). As there are no claims in this action that rely solely on Trezza's actions in 2009, the Court need not reach Coface's argument that such claims would be untimely.

C.  Title VII Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala College.*, 51 F.3d 383, 386 (3d Cir. 1995)). Facts pled in the complaint support the first two elements. As to the first element, Plaintiff clarifies in her brief that the protected activity she engaged in was "report[ing] Trezza's acts of sexual harassment to human resources and direct[ing] [employees who were harassed] to file internal complaints [regarding the harassment]." Pl. Brf. at 23. As to the second element, the only materially adverse employment action taken against Plaintiff that can be discerned from the complaint is the termination of her employment.

However, it is the third element where Plaintiff's complaint falls short. There are simply no facts pled from which a causal connection between Plaintiff's complaints in 2009 about Trezza's actions and Plaintiff's termination in 2011 can be inferred. The Third Circuit has noted

that a causal connection can be shown through (1) temporal proximity between the protected activity and the adverse employment action; (2) an intervening pattern of antagonism; or (3) other facts, that, when "looked at as a whole," are sufficient to raise an inference. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000). Nothing here supports the existence of a causal connection.

First, the temporal proximity does not suggest a causal connection. The last time Plaintiff complained to management about Trezza's actions was in March 2009, nearly two years before her termination. This simply is far too long of an interval to infer a causal connection between the two events. *See Dooley v. Roche Laboratories, Inc.*, 2007 WL 556885 (D.N.J. 2007) ("[T]he interval of time [between the protected activity and the adverse action], almost a full year, is simply to remote to for this Court to find a causal connection.").

Second, there is no intervening pattern of antagonism or mistreatment. Indeed, according to the complaint, Plaintiff appeared to be advancing in her career during the two-year period between the protected activity and her termination. She was asked to set up a new department for the company, which she described as "a chance to advance her career." Compl. ¶ 17. Thereafter, she requested and was granted a transfer to New Jersey, and was told she "would be a valuable asset" to her new division. *Id.* ¶ 23. Plaintiff states she continued to "successfully develop" her new department after her transfer to New Jersey. The complaint does note, however, that Plaintiff achieved her success despite "management" providing her with "little" support in the way of "tools and programming to work efficiently." *Id.* ¶ 18. The complaint also notes that, beginning apparently sometime in 2010, Plaintiff's "discussions" regarding business matters with her direct supervisor became more infrequent, until most of the conversations between the two were about "personal" matters. *Id.* ¶ 31. These allegations, however, do not

amount to a pattern of antagonism so as to bridge the large gap in temporal proximity and suggest a causal connection between the protected activity and Plaintiff's termination. Moreover, the complaint does not suggest in any way that either the lack of "tools and programming" or the decreasing interaction with her supervision was a result of Plaintiff engaging in the protected activity.

Last, for the same reasons described above, the facts alleged taken as a whole do not support the existence of a causal connection between Plaintiff's complaints about sexual harassment and her termination. Consequently, Plaintiff has failed to state a plausible claim for retaliation under Title VII.

D. CEPA claim

In order to establish a claim for retaliation under CEPA, a plaintiff must allege (1) he or she reasonably believed that the employer's conduct was violating a law, rule, regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she objected to the conduct; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 404 (3d Cir. 2007).

Although not readily apparent from the complaint, Plaintiff clarifies in her brief that the conduct she alleges that supports the first element of her claim revolves around her discovery of certain discrepancies in the company's internal reports. Pl. Brf. at 18. However, the complaint is devoid of any allegation that she told anyone about the discrepancies she discovered or, said another way, that she blew the proverbial whistle. Having failed to engage in any whistle-blowing activity, she cannot state a plausible claim for retaliation under CEPA.

E.  Good Faith and Fair Dealing Claim and Claims Under §§ 1981, 1985 and 1988

Plaintiff has failed to respond to Defendants arguments that she has failed to plead plausible claims for breach of the implied covenant of good faith and fair dealing or for violation of §§ 1981, 1985 and 1988.  As such, Plaintiff has abandoned those claims.  *See*, *e.g.*, *Duran v. Equifirst Corp.*, 2010 WL 936199, at *3 (March 12, 2010) ("The absence of argument constitutes waiver in regard to the issue left unaddressed, and that waives the individual counts themselves."); *Griglak v. CTX Mortg. Co., LLC*, 2010 WL 1424023 (D.N.J. April 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."); *Marjac, LLC v. Trenk*, 2006 WL 3751395 (D.N.J. December 19, 2006) ("Plaintiffs do not address their § 1983 claims [in their opposition to a motion to dismiss] … and has thus abandoned them.") (citing cases).

F.  Motion to Amend

Plaintiff has moved to amend her complaint to add a claim for sex discrimination and retaliation under New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.*, ("NJLAD").  Pursuant to Federal Rule of Civil Procedure 15, leave to amend the pleadings is generally given freely.  *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  However, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182.

A proposed amendment is appropriately denied where it is futile. An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). In determining whether an amendment is "insufficient on its face," the Court employs the Rule 12(b)(6) motion to dismiss standard. *See Alvin*, 227 F.3d at 121. Here the court finds the proposed amendment would be futile.

Although the motion to amend the complaint was apparently filed in response to Defendant's motion to dismiss, the proposed amended complaint does not contain any additional or clarifying factual matter. The proposed amended complaint is identical to the original complaint but for an added fifth count containing claims of retaliation and discrimination under NJLAD.

An analysis of claims made pursuant to the NJLAD generally follows the analysis of Title VII claims, *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999). As discussed above, an analysis under the relevant Rule 12(b)(6) standard shows that Plaintiff has failed to plead plausible claims of discrimination and retaliation under Title VII. It follows, therefore, that Plaintiff's proposed NJLAD claims would fail under the same standard. As such, the Court shall deny Plaintiff's motion to amend, finding that such amendment would be futile.

### III.  CONCLUSION

For the reasons above, Defendant's motion to dismiss is granted, and Plaintiff's motion to amend is denied. As Plaintiff's motion to amend was filed in response to Defendant's motion to dismiss, and the proposed amendment failed to save Plaintiff's complaint from 12(b)(6) dismissal, the Court finds that further leave to amend would be futile. *See Phillips v. County of*

*Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile.").  An appropriate Order accompanies this Opinion.

        /s/ Joel A. Pisano  
        JOEL A. PISANO, U.S.D.J.

Dated:  May 17, 2012